IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, INTERNATIONAL UNION, et al., | : : : : : : : : : : : | CIVIL ACTION |
| Plaintiffs, | | |
| v. | | |
| EXELON NUCLEAR SECURITY, LLC, | | NO. 11-1928 |
| Defendant. | | |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                              NOVEMBER 3, 2011

      This case arises from Exelon Nuclear Security, LLC's ("ENS") decision to terminate the employment of Security Officer William Bastone, and its subsequent refusal to arbitrate the grievance filed on his behalf by the United Government Security Officers of America, International Union and the United Government Security Officers of America, Local 17 (collectively, "UGSOA"). UGSOA filed a complaint seeking to compel ENS to arbitrate Mr. Bastone's grievance. In response, ENS, along with its parent company, Exelon Generation Company, LLC ("Exelon Generation"), filed a lengthy counterclaim with accompanying exhibits, seeking a declaratory judgment that Mr. Bastone's grievance and similar claims are not subject to arbitration under either the collective bargaining agreement between ENS and UGSOA, or applicable Nuclear Regulatory Commission ("NRC") regulations. Now before the Court is UGSOA's Motion to Strike ENS and Exelon Generation's (collectively, "Exelon") counterclaim.

      For the reasons that follow, the Court will deny UGSOA's Motion to Strike Defendants'

Counterclaims (Doc. No. 21).

I.      FACTUAL AND PROCEDURAL BACKGROUND

As a licensee of the NRC, Exelon Generation is authorized to own, operate, and engage in nuclear power generation at its nuclear power plants in Pennsylvania, New Jersey and Illinois under the authority, and subject to all of the conditions, of the NRC and the Atomic Energy Act of 1954.  Exelon CC ¶ 1.  Due to the highly sensitive, confidential, and potentially hazardous nature of the nuclear materials and data contained at these facilities, the NRC requires Exelon Generation and its other licensees to adhere to a complex set of security measures contained in a web of federal regulations.  See id. ¶¶ 16-17.  One such regulation requires Exelon Generation to adopt and adhere to an access authorization program, whereby Exelon Generation must regularly screen individuals who apply for and maintain unescorted access authorization to protected and vital areas within its nuclear power stations.  Id. ¶¶ 17-31.  The NRC regulations as well as Exelon Generation's own access authorization program are designed to ensure that those granted access authorization to its nuclear facilities are trustworthy, reliable, and loyal individuals who do not pose a security risk.  Id. ¶¶ 16, 21-24.

ENS is a wholly-owned subsidiary of Exelon Generation that provides security and protective services at Exelon Generation nuclear facilities.  Id. ¶ 4.  ENS trains, supervises, and employs armed security officers and other personnel at Exelon's nuclear facilities including its Oyster Creek Nuclear Generating Station.  UGSOA Complaint ¶¶ 2, 5.  As a prerequisite to employment as a security officer with ENS, all security officers must maintain unescorted access authorization with Exelon Generation.  Exelon CC ¶¶ 48, 49.

The security officers employed at the Oyster Creek Nuclear Generating Station are a unionized workforce, organized under the UGSOA. UGSOA Complaint ¶ 5. As the sole bargaining representative for its member security officers, UGSOA is party to collective bargaining agreements ("CBA") with ENS governing various conditions of employment including, but not limited to, wages, hours, and termination. UGSOA Complaint ¶¶ 3, 5.

William Bastone was a security officer at the Oyster Creek Nuclear Generating Station. Exelon CC ¶ 46. On or about February 19, 2010, Exelon Generation revoked Mr. Bastone's unauthorized access authorization after it determined that he was not trustworthy and reliable as required by NRC regulations and its own access authorization program. Id. ¶ 46. After Mr. Bastone's appeal of Exelon Generation's decision through its Access Authorization Appeals procedure proved unsuccessful, ENS terminated Mr. Bastone's employment because he "fail[ed] to maintain contractually and legally required unescorted access authorization to Exelon Generation['s] nuclear facilities." Id. ¶¶ 47-48.

UGSOA Local 17 promptly filed a grievance alleging that Mr. Bastone was unjustly terminated without cause in violation of the CBA between ENS and UGSOA. Id. ¶ 49. ENS, however, refused to arbitrate Mr. Bastone's grievance because it asserted his termination related to his inability to maintain unescorted access authorization with Exelon Generation, a contractual and legal prerequisite to maintaining his position with ENS. Id. ¶ 49.

Plaintiffs UGSOA filed this action[1] to compel ENS to submit to arbitration pursuant to the

---

[1]The complaint (Docket No. 1), filed on March 18, 2011, also asserted claims by the UGSOA Local 12 and Local 18 unions. However, on June 20, 2011, the parties filed a voluntary stipulation (Docket No. 15) pursuant to Rule 41(a) dismissing with prejudice all causes of actions and claims related to Local 12 and Local 18. FED. R. CIV. P. 41(a). The Exelon's Answer and Counterclaim address only the claims related to the remaining UGSOA plaintiffs (Docket No. 17).

grievance and arbitration provision of the parties' CBA.[2]  See UGSOA Ex. 1-B.  UGSOA seeks damages for breach of the CBA and a declaratory judgment that the CBA binds ENS to arbitrate Mr. Bastone's grievance.  In its answer, ENS denies that it breached the CBA with UGSOA, and asserts that the subject matter of Officer Bastone's grievance is not proper for arbitration under the terms of the CBA.

In addition to its Answer, ENS, along with third-party counterclaimant Exelon Generation, (collectively "Exelon") filed a Counterclaim against UGSOA requesting a declaratory judgment that (i) issues involving unescorted access authorization to Exelon Generation's nuclear facilities are not within the scope of the CBA between ENS and UGSOA, or arbitrable under the contractual grievance arbitration procedure contained therein, and (ii) NRC regulations and guidelines prohibit outside review of licensee unescorted access decisions.  Along with its Counterclaim, Exelon attached three exhibits: (i) a ten (10) page district court case from the Northern District of Illinois, (ii) a two (2) page copy of the Nuclear Energy Institute ("NEI") Guidelines recommending access denial review procedures for NRC licensees, and (iii) Exelon Generation's eighty-five (85) page access authorization program policy.

---

[2]Article 11, section 1 of the CBA provides:

> For the purpose of this Agreement, a grievance is defined as a difference of opinion, controversy, or dispute between the Employer [ENS, LLC] and the Union [UGSOA], or, between the Employer and an employee regarding only the meaning, application or interpretation of the terms of this Agreement, but not involving any change or addition to such provisions **provided; however, that issues involving the decision to grant or deny unescorted access under the access authorization program required by 10 C.F.R. Part 73 shall be resolved through the access authorization program appeal procedure, not through the grievance and arbitration procedure.**

Ex. 1-B, Art. 11, § 1 (Bold in original).

UGSOA now moves the Court to strike Exelon's Counterclaim pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(f).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" either on motion of a party or *sua sponte*. FED. R. CIV. P. 12(f). However, motions to strike are generally viewed with disfavor by the courts and "are often not granted if there is an absence of showing of prejudice to the moving party." Rose v. Rothrock, No. 08-3884, 2009 WL 1175614, at *7 (E.D. Pa. Apr. 29, 2009) (citation omitted). Striking a pleading is a drastic remedy, and complete dismissal of a pleading for failure to comply with Rule 8(a)(2) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Tillio v. Spiess, No. 11-1276, 2011 WL 3346787, at *1 (3d Cir. Aug. 4, 2011) (citation omitted).

To prevail on a motion to strike a pleading, the allegations must (1) "have no plausible relation to the controversy," and (2) "cause prejudice to one of the parties." McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

## III.   DISCUSSION

UGSOA moves to strike Exelon's counterclaim because, it asserts, the Counterclaim is redundant, immaterial, and impertinent in violation of Rule 8(a)(2) and Rule 12(f). See FED. R.

CIV. P. 8(a)(2) and 12(f).  UGSOA argues that Exelon's Counterclaim is filled with "numerous factual allegations and assertions regarding . . . the NRC and its procedures and communications with Exelon [Generation], voluminous documents that pertain to Exelon Generation's, not ENS' relationship with the NRC, historical and procedural material from another case in another district court and numerous legal arguments."  UGSOA Mot. at 4.  The Counterclaim, UGSOA notes, contains legal assessments, broad factual assertions, and rambling arguments relating to NRC rules and regulations, statutes, and congressional intent, all of which, it contends, are more appropriate for a brief rather than a counterclaim.  Accordingly, it argues, the Court should strike Exelon's Counterclaim in total.

Exelon responds that the Counterclaim contains the level of factual and legal detail called for under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Because its Counterclaim deals with a niche area of law, Exelon argues, greater detail in pleading is appropriate under Rule 8(a)(2).  Consequently, Exelon explains, the discussion of NRC regulations, guidelines, and the Illinois District Court case[3] is appropriate because they are part of the factual and legal context of the action.

The Court agrees that UGSOA has failed to carry its heavy burden of demonstrating that the Counterclaim must be struck.  Although UGSOA insists that NRC regulations, other district court decisions, and even Exelon Generation's presence in this action are irrelevant to its

---

[3]Exelon attached Exelon Generation Co., LLC v. Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO, No. 10-4846, 2011 WL (N.D. Ill. May 25, 2011) to its Answer and Counterclaim, to show that the U.S. District Court for the Northern District of Illinois has addressed what it described as a near identical issue, and determined "the Amended Access Regulations prohibit arbitration of unescorted access decisions."  Id. at *4.

allegation that ENS has breached its CBA with UGSOA by refusing to arbitrate Mr. Bastone's grievance, the Court is not convinced that it must draw such a line in the sand at this point in the proceedings.  Indeed, Exelon's contractual and statutory counterclaims may ultimately prove fatal to UGSOA's claim for relief.  Although the Court will not opine on the merits of Exelon's counterclaim at this time, the Court would be hard pressed to conclude that the Counterclaim and its accompanying exhibits have "no plausible relation to the controversy."

Likewise, Exelon's Counterclaim, which contains seventy-one (71) numbered paragraphs, is not so prohibitively long as to be prejudicial to UGSOA.  The Counterclaim, while at times repetitive, is of a reasonable length and contains the requisite detail in light of the complexity and context of its allegations.  See Wright & Miller, Federal Practice & Procedure § 1217 (2011) ("What constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters.").  In light of the Supreme Court's rulings in Twombly and Iqbal, which require a pleading's "factual allegations [to] be enough to raise a right to relief above the speculative level," this Court fails to see the prudence of striking a counterclaim because it contains too much detail.  Twombly, 550 U.S. at 555.  If anything, this added specificity puts UGSOA on fair notice of the precise nature of Exelon's claim.  See id. at 556 n.3 ("Without some factual allegation . . . , it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.")

Because UGSOA has not provided evidence of any real prejudice, the Court will not strike

Exelon's Counterclaim.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs have failed to demonstrate that Defendants' Counterclaim was unrelated to the controversy or that it causes prejudice to the Plaintiffs. Accordingly, the Court will deny Plaintiff UGSOA's Motion to Strike Defendant Exelon's Counterclaim.

An appropriate order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE