IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA, INTERNATIONAL UNION, et al., Plaintiffs & Counterclaim Defendants, | : : : : : : : | CIVIL ACTION |
| v. | : : | |
| EXELON NUCLEAR SECURITY, LLC, Defendant & Counterclaim Plaintiff, and | : : : : | No. 11-1928 |
| EXELON GENERATION CO., LLC, Third Party Counterclaim Plaintiff. | : : : | |

## MEMORANDUM

PRATTER, J.                                                                                                              OCTOBER 23, 2013

Although this case has the potential to raise complicated issues of nuclear regulatory law, the issue before the Court at this stage is relatively straightforward and familiar: Whether Defendant and Counterclaim Plaintiff Exelon Nuclear Security ("ENS") and Third Party Counterclaimant Exelon Generation Co.'s ("ExGen") Counterclaim for declaratory judgment survives or whether, as Plaintiffs United Government Security Officers of America, International Union, and United Government Security Officer of America, Local 17 (collectively, "UGSOA"), contend, (a) this Court lacks subject matter jurisdiction because there is no case or controversy; (b) the Counterclaim is not ripe for review; (c) the Court lacks the authority to determine questions of arbitrability; and/or (d) the Counterclaim does not state a claim, *see* UGSOA Mot. Dismiss (Docket No. 31). Because the Court finds that these contentions are without merit, for the reasons that follow, it denies UGSOA's Motion to Dismiss.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

This action arises out of ENS's refusal to submit to arbitration regarding its employment termination of Armed Nuclear Security Officer William Bastone.[2] ENS, a wholly-owned subsidiary of ExGen, employs Armed Nuclear Security Officers ("ANSOs") to protect nuclear power plants owned and operated by ExGen, a licensee of the Nuclear Regulatory Commission ("NRC"), under the Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.*, and the NRC regulations promulgated pursuant to the Act. These regulations affix strict requirements upon licensees to ensure the protection of nuclear plants and materials. *See* 10 C.F.R. pt. 73. In particular, the regulations establish the framework licensees must put in place for determining whether individuals shall have "unescorted access" to a nuclear facility. *See* 10 C.F.R. § 73.56.

Officer Bastone worked for ENS as an ANSO at ExGen's Oyster Creek Nuclear Generating Station before ExGen revoked his unescorted access authorization. Because ANSOs must be able to access all—even the most vulnerable—areas of a nuclear generating station, they must maintain unescorted access authorization as a condition of employment. Consequently, ENS's Collective Bargaining Agreement ("CBA") with United Government Security Officers of America, Local No. 17, that governs the relationship between UGSOA and ENS at Oyster Creek, provides that "[a]s a condition of employment and continued employment, an employee must meet the . . . security clearance requirements necessary for an employee's labor category . . . ." Agreement Between Exelon Nuclear Sec., LLC and United Gov't Sec. Officers of Am. Local

---

[1] The following summary is based on the allegations in ENS and ExGen's Counterclaim, which the Court assumes to be true for purposes of adjudicating UGSOA's Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[2] UGSOA, along with two of its local unions, originally brought claims on behalf of two other Armed Nuclear Security Officers, but the Court approved the parties' stipulated dismissal of these claims (Docket Nos. 15 & 30).

No. 17 at Oyster Creek Nuclear Generating Station, November 20, 2009–November 19, 2013, art. 28-A, § 20 (Compl. Ex. 1-B (Docket No. 1)) (hereinafter ENS–UGSOA CBA). Although ENS requires ANSOs to maintain unescorted access authorization, ExGen as the NRC licensee actually determines whether an individual has unescorted access because only it, unlike ENS, is an NRC licensee. *See* 10 C.F.R. § 73.56(a)(4) ("Only a licensee shall grant an individual unescorted access."). Exelon is not a signatory to the CBA.

At some point, ExGen discovered that Officer Bastone had failed to make required disclosures regarding certain prior medical conditions. ExGen investigated the situation and, determining that Officer Bastone's withholding of this information indicated that he was not trustworthy or reliable, therefore temporarily revoked his unescorted access authorization on February 18, 2010. The next day, as a result of the temporary hold on his unescorted access authorization, ENS placed Officer Bastone on administrative leave.

Officer Bastone appealed the denial of access to ExGen's Appeal Reviewer under the appeals structure provided by its access authorization program. At the same time, pursuant to its CBA with ENS, UGSOA Local 17 filed Grievance No. OYC-111 (UGSOA Mot. Dismiss, Ex. A), in which it alleged that Officer Bastone had been "unjustly terminated without cause" in violation of "the current CBA between Exelon and Local 17 UGSOA."

The CBA is between ENS and UGSOA Local 17; ExGen is not a signatory. The CBA provided, in pertinent part:

> For the purpose of this Agreement, a grievance is defined as a difference of opinion, controversy, or dispute between the Employer [ENS] and the Union, or, between the Employer and an employee regarding only the meaning, application or interpretation of the terms of this Agreement, but not involving any change or addition to such provisions **provided; however, that issues involving the decision to grant or deny unescorted access under the access authorization program required by 10 C.F.R. Part 73 shall be resolved through the access**

3

> **authorization program appeal procedure, not through the grievance and arbitration procedure.**

ENS–UGSOA CBA, art. 11, § 1 (emphasis in original). In addition to exempting from arbitration "issues involving the decision to grant or deny unescorted access," the CBA provided that "the employee has the right to appeal denial of site access in accordance with the requisite provisions of the Nuclear Regulatory Commission." *Id.* art 12, § 8. The CBA also provided that

> [a]s a condition of employment and continued employment, an employee must meet the physical, mental, training and *security clearance requirements* necessary for an employee's labor category . . . . An employee who fails to qualify, re-qualify or to maintain the above requirements, licenses, certifications, etc., necessary for continued employment will be subject to termination under this Agreement.

*Id.* art 28-A, § 20 (emphasis added).

On these grounds, ENS denied the grievance (as well as any violation of the CBA) and explained to UGSOA Local 17 that "Officer William Bastone does not have the access authorization necessary to maintain his position as an Armed Security Officer at a nuclear facility" and that "the decision regarding Officer Bastone's unescorted access is not subject to challenge through the grievance and arbitration procedure, as confirmed in Article 11, Section 1 of the CBA." On June 4, 2010, ENS terminated Officer Bastone's employment as an ANSO at Oyster Creek on the grounds that working as an ANSO was contingent upon his maintaining his unescorted access authorization, without which an individual could not serve as an ANSO at Oyster Creek.

In response to ENS's refusal to submit to arbitration, UGSOA filed an action in this Court to compel arbitration. It alleges that ENS breached the CBA, in violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, by refusing to "proceed to arbitration on Grievance No. OYC-111 (Local 17) regarding the termination of SO William Bastone." Compl.

¶ 10. UGSOA seeks a declaration that ENS breached the CBA, as well as injunctive relief compelling arbitration.

ENS answered UGSOA's Complaint and, along with Third Party Counterclaimant ExGen, brought counterclaims against UGSOA. Counterclaim Count I is a demand for declaratory judgment by ENS alone against UGSOA regarding the arbitration exemption provision of the CBA. Count II is a demand for declaratory judgment by both ENS and ExGen as to whether the NRC regulations prohibit arbitration of denials of access authorization. UGSOA's subsequent Motion to Strike the Counterclaim was denied. *United Gov't Sec. Officers of Am., Int'l Union v. Exelon Nuclear Sec., LLC*, No. 11-1928, 2011 WL 5340043 & 2011 WL 5340547 (E.D. Pa. Nov. 4, 2011)).

UGSOA then filed the Motion to Dismiss ENS and ExGen's Counterclaim, the Motion currently before the Court. ENS and ExGen jointly responded and the Court held oral argument on the Motion. Following the Seventh Circuit Court of Appeals' March 2012 decision in *Exelon Generation Company, LLC v. Local 15, IBEW, AFL-CIO*, 676 F.3d 566, *reh'g en banc denied*, 682 F.3d 620 (7th Cir. 2012), the parties here submitted supplemental memoranda regarding the possible impact of that decision, viz., that as a matter of federal law, 10 C.F.R. § 73.56 permits arbitration of unescorted access authorization denials and revocations pursuant to collective bargaining agreements, *see* 676 F.3d at 575.

The Court now rules upon UGSOA's Motion to Dismiss.

**II.    STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim

5

showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the court adheres to certain well-recognized parameters. For one, the court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that

6

may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand the Court turn its back on reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d. Cir. 2008).

### III. DISCUSSION

In Counterclaim Count I, ENS alone demands declaratory judgment that the CBA bars arbitration of this dispute. In essence, Count I is the obverse of UGSOA's Complaint and, like the other side of most coins, it tenders the same issue but with differing embellishments. By contrast, Count II is brought by both ENS and ExGen and demands declaratory judgment that, inter alia, because ENS is not an NRC licensee, it cannot review ExGen's unescorted access authorization decisions because as a matter of federal law under 10 C.F.R. § 73.56(a)(4), "issues involving [ExGen's] decisions to deny, revoke, or place a hold on unescorted access

7

authorization may not be reviewed or overturned by an independent labor arbitrator or other third party." Counterclaim Prayer for Relief II.B, at 35.

UGSOA raises four arguments, namely, that (1) this Court lacks subject matter jurisdiction because there is no case or controversy; (2) the Counterclaim is not ripe for review; (3) the Court lacks the authority to determine questions of arbitrability; and (4) the Counterclaim does not state a claim. The Court addresses these arguments in turn.

UGSOA argues first that the Court lacks jurisdiction because Counts I and II do not state an actual case or controversy in that "there is no 'legal controversy that is real and not hypothetical.'" UGSOA Mot. Dismiss at 5-9 (citing *Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987)). UGSOA also argues that because 29 U.S.C. § 185 requires, as a jurisdictional matter, violation of a contract or collective bargaining agreement and that the suit be between the employer and the labor organization, and "the employees represented by the UGSOA 'are employed by [ENS], not [ExGen],'" UGSOA Mot. Dismiss at 7 (quoting Counterclaim ¶ 13), there is no case or controversy with ExGen. Further, UGSOA argues, "the Counterclaims do not set forth any facts that, if true, would establish a violation of a contract or collective bargaining agreement." *Id.* The dispute here is not about the denial of ANSO Bastone's access authorization, UGSOA asserts, but about "arbitration with [ENS] with respect to its actions, and not the actions of Exelon Generation. Thus, the grievance currently at issue cannot violate the CBA in the manner alleged in the Counterclaims, as it does not, on its face, pertain to a denial of access." *Id.* Attempting to split the atom, UGSOA argues that "[w]hile an arbitrator is not going to reverse Officer Bastone's denial of access"—presumably because UGSOA concedes that under article 11, section 1 of the CBA an arbitrator cannot, *see id.* at 8-9 & n.1—"she is not prohibited by the CBA from hearing evidence on how ENS decided to place

Officer Bastone in the context of having his access reviewed in the first place and whether that review was improperly initiated by ENS due to an unlawful animus or an inconsistent and disparate manner," *id.* at 8. "[B]ecause there is no violation of the CBA," UGSOA contends, "nor a 'live or concrete controversy,' this Court lacks jurisdiction to hear claims based on nothing more than the mere speculations and conjectures of the Counterclaimants." *Id.* at 9.

The Court disagrees. As ENS and ExGen point out, "It simply strains credulity for [UGSOA] to argue that the Court *has* jurisdiction over *its* Complaint seeking a declaration that ENS violated the CBA and that its grievance is arbitrable, but somehow *lacks* jurisdiction over *Respondents'* Counterclaim seeking a declaration to the contrary." Defs.' Opp. at 2 (Docket No. 32). There is no question that there is a case or controversy here: the issues are, (a) with respect to Count I (between ENS and UGSOA), whether the CBA permits arbitration of Officer Bastone's grievance; and, (b) with respect to Count II (between ENS and ExGen and UGSOA), whether federal law (namely, 10 C.F.R. § 73.56) permits arbitration of denials of access authorization. "Whenever an actual controversy exists between the parties and the circumstances indicate that declaratory relief may be an appropriate method for the settlement of the conflict, a counterclaim or a crossclaim for declaratory judgment will be permitted." 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1406 (3d ed. 2013).

Any suggestion that because ExGen is not a party to the CBA it is not a proper party here is belied by the fact that the Court has subject matter jurisdiction under 28 U.S.C. § 1331 to address the federal question of the proper interpretation of 10 C.F.R. § 73.56 and standing exists because, if ENS's Counterclaims under Count I fail—i.e., if the Court decides that the CBA *does not* prohibit arbitration of Officer Bastone's termination and/or denial of access authorization— then ExGen's denial of access authorization is itself at risk of third party review—a legal harm

sufficient to confer standing. In other words, because Count II is contingent upon a certain outcome under Count I, Count II is properly pled in the alternative. To dismiss Count II at this point would amount to rendering a merits decision on Count I—an issue not currently before the Court.

UGSOA moves to compel arbitration because, it contends, the underlying grievance "does not seek to redress his access denial by [ExGen], nor does the relief requested seek to change, reverse, or otherwise undermine the decision to deny Bastone's access." UGSOA Mot. Dismiss at 7. But the facts as alleged by ENS and ExGen are not so fissile. At the motion to dismiss stage, the Court must accept *ENS's and ExGen's* factual allegations in the Counterclaim as true, rather than UGSOA's. And the allegations to be credited at this stage establish that (1) ExGen, as an NRC licensee, denied Officer Bastone unescorted access authorization, Counterclaim ¶ 46; (2) ENS terminated him "on the grounds that his employment with ENS as an [ANSO] at Oyster Creek nuclear generating station was contingent upon his maintaining unescorted access, which he failed to do," Counterclaim ¶ 48; and (3) Officer Bastone's grievance raises the issue of his access denial and, (4) therefore, under article 11, section 1 of the CBA, is precluded from arbitration.

That this fourth and final allegation is a legal conclusion is immaterial, because the parties agree that they signed the CBA, and the Court is thus endowed with jurisdiction to determine what, in fact, article 11, section 1 means with respect to Officer Bastone and ENS (and, of course, what 10 C.F.R. § 73.56 means with respect to arbitration, should Count I not survive). Despite the dictates of Federal Rule of Civil Procedure 12(b)(6), what UGSOA asks, in essence, is that the Court accept the facts alleged in *its* Complaint as true, rather than the facts alleged in the Counterclaim. But as the Defendants put it at oral argument,

> [B]asically what [UGSOA] is doing here [is] putting a different spin on the nature of their claims and the issues that they say are at issue in this case. But that spin goes to the merits. We say that they are challenging access. They say, oh no, it's just termination and it's just this argument about putting Officer Bastone in the position of having his access reviewed. That goes to arbitrability and that's an issue that the Court will have to decide at some point down the road. But that's jumping the gun, [and] that's not what we're here to discuss today. The issue is as a matter of law, under 12(b)(6) and 12(b)(1), pursuant to which our allegations must be accepted as true, is it the case that as a matter of law everything we say must be disregarded and everything that they say . . carries the day and we don't even have a forum in which to make these arguments[?]

Tr. 19:1-17 (Docket No. 39). The answer to that question is no. At this stage of the litigation, the Counterclaim alleges a case or controversy between ENS and ExGen on the one hand and UGSOA on the other. Among other reasons, ENS and ExGen have standing by virtue of the fact that ENS will be injured if it is forced to arbitrate, in violation of the CBA, and ExGen will be harmed if an arbitrator reconsiders its denial of Mr. Bastone's access authorization.

Second, UGSOA claims that the Counterclaim is not ripe for review because "Counterclaimants' claim for relief is based solely on a misrepresentation of the current issue and further speculation of events that may or may not occur in the future between them and the UGSOA" such that any decision by this court "would amount to a 'purely advisory' opinion." UGSOA Mot. Dismiss at 10 (citing *United Gov't Sec. Officers of Am., Int'l Union v. Akal Sec., Inc.*, No. 09-0025, at 5 (D.N.M. July 22, 2009), *attached as* Ex. B to UGSOA Mot. Dismiss).

The Court agrees with UGSOA that to the limited extent that the Counterclaim can be construed as asking for declaratory judgment regarding arbitrability under the CBA vis-à-vis any potential future access denials or terminations giving cause to future grievances, *see* UGSOA Mot. Dismiss at 10, no such advisory opinion may issue. But, as ENS and ExGen correctly argue, "the current controversy over Bastone's Grievance alone suffices for jurisdictional purposes, regardless of whether other access-related disputes are pending or arise in the future." Defs.' Opp. at 9. There can be no serious dispute that with regard to Officer Bastone's grievance

the counterclaims are ripe. In fact, as ENS and ExGen point out, "[i]ronically, the Union's own cases attached to its Motion confirm that jurisdiction exists here," i.e., that this case is ripe. *Id.* In the first case, UGSOA had withdrawn its grievance and arbitration requests such that, without any pending dispute, the claim was not ripe. *See United Gov't Sec. Officers of Am., Int'l Union v. Akal Sec., Inc.*, No. 09-0025, at 5 (D.N.M. July 22, 2009) ("[S]ince Plaintiff no longer wishes to pursue Ms. Michaels' demand for arbitration, and because none is pending, a declaration on the arbitrability of this class of disputes would be purely advisory."). But that court also went on to say that "[a] more appropriate lawsuit in which to decide the substantive contractual issue is one, should it ever arise, in which [UGSOA] refuses to rescind a motion seeking to compel arbitration under the CBA. Only then will a court have sufficiently vigorous arguments on each side." *Id.* at 5-6. That is the case here—if their litigation of these threshold issues is any indication, these parties will surely make "vigorous arguments on each side."

Likewise, in the second case, there was no pending grievance or arbitration because Akal Security had already acquiesced to the arbitration of a dispute, and, instead of asking the court for relief from *that* arbitration, it "request[ed] declarations . . . that would prevent any future arbitration awards from being issued based on the [United States Marshals Service's] revocation of an individual [Court Security Officer's] credentials. Such a request involves uncertain or contingent future events that may not occur as anticipated." *Akal Sec., Inc. v. United Gov't Sec. Officers of Am., Int'l Union*, No. 10-2352, at 5-6 (D. Co. May 25, 2011). As in the case discussed above, the court observed:

> There is currently no direct and immediate dilemma between the parties. If, sometime in the future, UGSOA seeks to arbitrate the termination of a [Court Security Officer] based upon the [United States Marshals Service's] revocation of the [Court Security Officer's] credentials, then there would be a direct and immediate dilemma between the parties. The question of whether [a provision in

12

the applicable collective bargaining agreement] prevents such arbitration would
then be ripe.

*Id.* at 6. Again, the court's hypothetical there is the actual issue here. Thus, while this Court will not entertain the Defendants' argument that they should be entitled to a blanket declaration regarding the meaning of the CBA, the contention that the Counterclaim is not ripe with respect to Officer Bastone's employment termination is without merit.

The same goes for any ripeness argument with respect to Count II. The ripeness requirement's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). But the parties' argument here is hardly abstract. If the CBA does not bar arbitration of Mr. Bastone's grievance, then the question is whether 10 C.F.R. § 73.56 does. Either the CBA or the NRC regulations could dispose of this case—or not—depending on a future ruling on the merits. Finally, to the extent that what UGSOA means by "ripeness" is actually "standing," the result would be no different, and for much the same reasons discussed above.

Third, UGSOA's contention that questions of arbitrability do not present a federal question in this case is confounding, given that UGSOA began this chain reaction by suing to compel arbitration pursuant to federal law. Two observations suffice to dispose of this line of argumentation. First, the Labor Management Relations Act provides jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185; *see, e.g.*, *Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*, 989 F.2d 668, 671 (3d Cir. 1993); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 646 & n.4 (1986). Second, the Supreme Court has

repeatedly ruled that "unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator," *AT&T Techs.*, 475 U.S. at 649 (citing cases); *accord Medtronic AVE, Inc. v. Advanced Cardio. Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001) ("[U]nder section 4 when one party refuses to arbitrate, the issue of whether the dispute is within the scope of the agreement requires district court resolution." (discussing 9 U.S.C. § 4 of the Federal Arbitration Act)).

Fourth, UGSOA argues that the Counterclaim does not state a claim upon which relief may be granted because the Court is not required to accept ENS and ExGen's "attempting to recast the grievance," through legal conclusions, "into something that it is not, i.e., a challenge to Officer Bastone's denial of access." UGSOA Mot. Dismiss at 15. UGSOA contends that the grievance is instead only about ENS's "termination of Officer Bastone without just cause and the actions taken by [ENS] which displayed disparage [sic] treatment against him based on his union activities." *Id*; *see also id.* Ex. A. But although the parties do in fact offer different legal conclusions regarding the applicability of the CBA (in particular, article 11, section 1) to Officer Bastone's grievance, ENS and ExGen's "recast[ing of] the grievance" is not a conclusory legal assertion. Rather, as has already been discussed, it consists of factual assertions that Officer Bastone was denied access authorization by ExGen, *see* Counterclaim ¶¶ 46-47, and that ENS terminated him *because* he was denied access authorization, *see* Counterclaim ¶¶ 48-49, 51. Although legal conclusions may be involved, ENS and ExGen's contention is that as a matter of fact ENS terminated Officer Bastone on June 4, 2010, because his access authorization lapsed. ENS then asks for a declaratory judgment as to what effect, under the CBA, this action might have, and ENS and ExGen request a declaratory judgment as to what effect, under federal law, this action might have. But accepting ENS and ExGen's factual allegations as true, as the Court

must at the motion to dismiss stage, the Court notes that that question of effect is one for another day.

**CONCLUSION**

Because UGSOA has presented no meritorious arguments in support of its Motion to Dismiss ENS and ExGen's Counterclaim, its Motion must be denied. The Counterclaim, if potentially redundant with UGSOA's Complaint in some respects, is so precisely because Counts I and II share the same nucleus of material events as UGSOA's Complaint—ExGen's denial of Officer Bastone's access authorization and then his termination by ENS. Because the Counterclaim concerns a live dispute over the scope of an arbitration provision, there is no question that Counts I and II are ripe, that they confer standing upon ENS and ExGen, and that this Court has subject matter jurisdiction over the claims.

For this litigation to proceed, the Court will have to determine whether the CBA between ENS and UGSOA requires or precludes arbitration of Officer Bastone's grievance. Only if that question is answered in UGSOA's favor will the Court be forced to confront the question raised by Count II, namely, whether the Nuclear Regulatory Commission's regulations, and in particular, 10 C.F.R. § 73.56, prohibit arbitrators from revisiting denial of access authorization decisions—the question the Seventh Circuit Court of Appeals recently answered in the negative. *See Exelon Generation Company, LLC v. Local 15, IBEW, AFL-CIO*, 676 F.3d 566, *rehearing en banc denied*, 682 F.3d 620 (7th Cir. 2012). Although the parties have hotly contested the correctness of the Seventh Circuit Court of Appeals' ruling and its application to Count II here, *see* UGSOA Supp. Mem.; Defs.' Supp. Mem., these arguments belong to the merits stage, not to the question of whether ENS and ExGen have established ripeness or standing. Thus, even

though it is inappropriate to dismiss Count II at this juncture because ENS and ExGen have properly pled it in the alternative, it would also be imprudent to dismiss Count II solely on account of the Seventh Circuit Court of Appeals' reasoning when it is unclear that the issue will be the one that disposes of this case.[3]

\* \* \*

For the foregoing reasons, UGSOA's Motion to Dismiss is denied and UGSOA is required to answer ENS and ExGen's Counterclaim. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[3] In response to the Seventh Circuit Court of Appeals' decision in *Exelon Generation Company, LLC*, 676 F.3d 566, a petition for clarifying rulemaking, along with the petitioner's proposed modifications, is currently pending before the NRC on the issue of whether access authorization can be arbitrated under 10 C.F.R. § 73.56. The NRC requested comments. The comment period closed on June 6, 2013. *See* Personnel Access Authorization Requirements for Nuclear Power Plants, 78 Fed. Reg. 23,684 (Apr. 22, 2013).